STATE OF CONNECTICUT *v.* DOUGLAS JAYNES
(13076)

DUPONT, C. J., and O'CONNELL and SPEAR, Js.

Argued September 14—decision released December 20, 1994

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals[1] from the judgment of conviction, following a jury trial, of murder in violation of General Statutes § 53a-54a (a).[2] The defendant claims that (1) the trial court and the state's attorney improperly denied him access to exculpatory material, (2) the trial court improperly admitted identification testimony into evidence, (3) the trial court improperly instructed the jury on intent to kill, and (4) the trial court improperly failed to conduct a hearing as to whether a juror felt pressured. We affirm the judgment of the trial court.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

The jury reasonably could have found the following facts. Early in the morning of February 23, 1989, the victim, Eugene Deis, and Pamela Teague were seeking to purchase cocaine in New Haven. Deis was driving his car and Teague was in the front passenger seat. On Southwest Drive near its intersection with Dixwell Avenue, they were flagged down by two drug runners, Michael Little and Nessie Jacobs.

Deis told the runners what he wanted, and they relayed the order to Reggie Cash. Cash was nearby with drugs that he had previously received from the defendant. Cash and Little approached Deis' car to complete the transaction. As Cash handed Deis the cocaine, Deis started the car, giving the impression that he intended to drive away without paying. Cash and Little reached into the car and grabbed the victim, preventing him from leaving.

Teague got out of the car and went toward the intersection looking for a telephone or a police officer. Finding neither, she stood on the sidewalk and watched the struggle. She saw Jacobs and the defendant approach the car. The defendant pulled a handgun, fired into the car and hit Deis, who died within minutes.

Jacqueline Ellis, who had known the defendant for many years, also witnessed the incident. She saw the defendant, with a handgun, walk over to the victim's car. She then heard a shot. Little also saw the defendant reach into the car with a gun and then heard a shot. Cash and Jacobs both heard the shot but neither saw who fired the gun.

The defendant testified that he saw an unidentified male run up to Deis' car, fire one shot and run away. No one else saw this man. Additional facts are included in our analysis of the issues.

## I

The defendant first claims that the state's attorney and the trial court denied him access to discoverable exculpatory material in violation of his constitutional rights to due process, to present a defense and to the assistance of counsel.

The state police forensic laboratory analyzed the bullet taken from the victim's body and concluded that it came from the same gun that was fired in an unrelated crime in Hamden on December 23, 1988. The state disclosed this information but, because the Hamden case was still open, refused to allow the defendant access to the Hamden police reports.

The defendant subpoenaed the Hamden police file and, following completion of the state's case-in-chief, moved for its production. The trial court examined it in camera, determined that it contained no exculpatory evidence and declined to order its production. The defendant argues that discovery of the Hamden file would have allowed him to develop exculpatory evidence contained therein (1) to support the defendant's testimony of third party culpability and (2) to impeach the observations and credibility of the two state witnesses who claim to have seen the gun in the defendant's hand.

The state is constitutionally obligated to disclose evidence that is material and potentially exculpatory. *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Quintana*, 209 Conn. 34, 37, 547 A.2d 534 (1988); see also General Statutes § 54-86c;[3]

---

[3] General Statutes § 54-86c provides in relevant part: "(a) Not later than thirty days after any defendant enters a plea of not guilty in a criminal case, the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case shall disclose any exculpatory information or material which he may have with respect to the defendant whether

Practice Book § 741 (1).[4] In addition, an independent right to disclosure of exculpatory evidence has been recognized under the due process provision of article first, § 8, of the Connecticut constitution.[5] *State* v. *Simms*, 201 Conn. 395, 405 n.8, 518 A.2d 35 (1986).

## A

" 'In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material.' " *State* v. *Rasmussen*, 225 Conn. 55, 90, 621 A.2d 728 (1993).

It is not disputed that after a proper request the state refused to release the Hamden file to the defendant and that, subsequently, the trial court denied the defendant's discovery motion. Accordingly, the first *Brady* prong has been satisfied.

We will analyze the second prong—favorableness—and the third prong—materiality—together. "Favorable evidence is that evidence which . . . might have

---

or not a request has been made therefor. If prior to or during the trial of the case, the prosecutorial official discovers additional information or material which is exculpatory, he shall promptly disclose the information or material to the defendant.

"(b) Any state's attorney, assistant state's attorney or deputy assistant state's attorney may request an ex parte in camera hearing before a judge, who shall not be the same judge who presides at the hearing of the criminal case if the case is tried to the court, to determine whether any material or information is exculpatory. . . ."

[4] Practice Book § 741 provides in relevant part: "Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy, photograph and have reasonable tests made on any of the following relevant materials;

"(1) Exculpatory information or materials . . . ."

[5] The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist." (Citations omitted; internal quotation marks omitted.) *State* v. *Green,* 194 Conn. 258, 265, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). On the other hand, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States* v. *Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *State* v. *Rasmussen,* supra, 225 Conn. 92; *State* v. *Pollitt,* 205 Conn. 132, 142–43, 531 A.2d 125 (1987).

" 'Impeachment evidence as well as exculpatory evidence falls within *Brady's* definition of evidence favorable to an accused.' " *State* v. *Demers,* 209 Conn. 143, 161, 547 A.2d 28 (1988). The defendant argues that evidence in the Hamden file was favorable because the Hamden witnesses described the weapon as a big black or blue-black revolver, whereas in the present case two state witnesses described the weapon as silver in color. The defendant contends that this discrepancy might have caused the jury to discredit the state's witnesses in this case. The fallacy in the defendant's argument is that, because the gun has never been recovered, the evidence in the Hamden file could show only that the witnesses in one of the cases were apparently mistaken. Particularly damaging to his argument is the fact that the defendant himself testified that he witnessed the shooting and the gun was silver. Thus, the defendant puts himself in the unique position of seeking evidence to impugn his own credibility.

The defendant loses sight of the fact that the purpose of discovery is to obtain information. The possible color discrepancy was already known to the defendant. The

state's ballistic expert had testified in the jury's presence that the gun that fired both bullets was probably a Charter Arms .44 caliber Bulldog revolver and that in his experience such guns were made of blue steel.

The defendant fully cross-examined the state's ballistic expert on the color of the gun in the presence of the jury. The jury also heard the state's witnesses, as well as the defendant, testify that the gun in the present case was silver. Accordingly, the jury was well aware that witnesses in this case were of the opinion that the gun was not the same color as that which the state's expert described.

This case turns on the "material" *Brady* prong. "[T]he mere *possibility* that an item of undisclosed evidence might have helped the defense or *might* have affected the outcome of the trial . . . does not establish materiality in the constitutional sense." (Emphasis in original; internal quotation marks omitted.) *State* v. *Pollitt,* supra, 205 Conn. 149. Because the determination of materiality is inevitably fact bound, a reviewing court must give deference to the trial court's determination, especially in the weighing of the evidence. *United States* v. *Kelly,* 790 F.2d 130, 136 (D.C. Cir. 1986); *State* v. *Pollitt,* supra, 149.

Materiality is not determined in a vacuum; rather, it must be made in the context of all the evidence adduced at trial. *State* v. *Pollitt,* supra, 205 Conn. 143. Accordingly, the trial court properly determined that even if the Hamden witnesses' descriptions of the gun were favorable to the defendant, they were not material because they involved only a *mere possibility* that they *might have* helped the defendant as opposed to the required *reasonable probability* that the result of the proceeding would have been different. *United States* v. *Bagley,* supra, 473 U.S. 682; *State* v. *Pollitt,* supra, 149.

## B

The defendant also contends that discovery of the Hamden file would have supported his claim of third party culpability. "[A] defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence *which directly connects* a third party to the crime . . . . It is not enough . . . to raise a bare suspicion that some other person *may have committed* the crime . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Holeman,* 18 Conn. App. 175, 182, 556 A.2d 1052 (1989); see 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 93g (3).

The defendant's third party theory was based solely on his own testimony. No other witness saw the phantom shooter appear suddenly, shoot the victim and run away. Moreover, the Hamden file does not contain a description of any person who resembles the defendant's description of the unknown shooter.

The defendant argues that if he had been given access to the Hamden file it *might* have given him leads that he could have followed, which *might* have furnished helpful evidence. This argument runs afoul of the standard that the *mere possibility* that undisclosed evidence *might* have helped the defense or *might* have affected the outcome is not enough. *State* v. *Pollitt,* supra, 205 Conn. 149.

In the usual scenario in this type of case, the trial court has denied the defendant access to a desired file and sealed it for our review. Lack of knowledge of the file's contents is an understandable handicap to appellate counsel's arguing that the trial court improperly denied access. In this case, however, counsel was not

so handicapped. The Hamden case was concluded after the verdict in the present trial but before sentencing. At that point, the trial court unsealed the file and gave the defendant full access to it. Despite the advantage of this access, however, the defendant has not persuaded us that the information in the Hamden file would have been both favorable and material to his defense. See *United States* v. *Bagley,* supra, 473 U.S. 682.

We conclude that neither the state's attorney nor the trial court violated the defendant's constitutional or statutory rights, or his rights under the rules of practice, to any exculpatory material.

## II

We turn next to the defendant's claim that the trial court improperly allowed Teague's identifications of the defendant into evidence. " 'The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence when the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983). "In order to establish that a pretrial identification procedure has violated a defendant's constitutional right to due process, the defendant must prove (1) that the identification procedure was unnecessarily suggestive, and (2) that the resulting identification was not reliable under the totality of the circumstances." *State* v. *Hunt,* 10 Conn. App. 404, 407, 523 A.2d 514 (1987). Whether such an identification procedure is unnecessarily suggestive, depends on the facts and circumstances of each case. *State* v. *Findlay,* 198 Conn. 328, 337–38, 502 A.2d 921, cert. denied,

476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).'
*State* v. *Arroyo,* 13 Conn. App. 687, 690, 539 A.2d 581,
cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988). To
prevail on his claim the defendant 'must show that the
trial court erred in determining both the "suggestive-
ness" and "reliability" of the identification. *State* v.
*Sims,* [12 Conn. App. 239, 242, 530 A.2d 1069 (1987),
cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988)].'
*State* v. *Barnes,* 16 Conn. App. 333, 343–44, 547 A.2d
584 (1988)." *State* v. *Gagnon,* 18 Conn. App. 694,
701–702, 561 A.2d 129, cert. denied, 213 Conn. 805,
567 A.2d 835 (1989).

In *State* v. *Daniels,* 13 Conn. App. 133, 135, 534 A.2d
1253 (1987), this court, in an opinion written by now
Justice Borden, disposed of challenges to identification
evidence as follows: "The trial court held an eviden-
tiary hearing regarding the identifications and specif-
ically found that none of them was the result of an
impermissibly suggestive procedure, and that they were
reliable. . . . It would serve no useful purpose to
recite those findings here. We have fully reviewed the
record, and we conclude that those findings are amply
supported by the evidence." (Citation omitted.) The
same is true in the present case.

The trial court properly allowed Teague's identifica-
tions into evidence.

### III

The defendant next claims that the trial court's
instruction improperly allowed the jury to find the
defendant guilty of murder on the basis of proof of
intent to engage in conduct, rather than the required
intent to cause a specific result, i.e., death.[6]

[6] The trial court's charge to the jury on intent was as follows: "You must
find proved beyond a reasonable doubt that Mr. Deis died as a result of
the actions of the defendant. Next, you must conclude that the person caus-
ing the death of the victim must have done so with the intent to cause the

Because the defendant did not file a request to charge or except to the charge as given, he seeks review under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] Under the *Golding* guidelines, a defendant can assert a constitutional claim, not preserved at trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation

death. So, I'll define intent for you. And it's not as complicated as it might seem. A person acts 'intentionally' with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct. Intent is a mental process. To discern what a person is thinking, the question of intent may be determined by considering all the facts and circumstances leading up to, surrounding and following the events in question. You may consider any statement made and any act done or omitted by the defendant, along with other facts and circumstances in evidence, and from those you may infer what his intention was. If you find that the state has proved beyond a reasonable doubt that the defendant had the intent to cause the death of and that having that intention to cause the death of Mr. Deis, the defendant did cause his death, then you may find the defendant guilty of the crime of murder. On the other hand, if after reviewing all of the evidence, you find that the state has failed to prove beyond a reasonable doubt either or both of the elements of the crime charged, then you must find the defendant not guilty."

The court then gave as an example that the jury could infer intent from watching the court drink a glass of water. See footnote 9. It then continued its charge as follows:

"So let me just summarize by reading the statute. 'A person is guilty of murder, when, with intent to cause the death of another person, he causes the death of such person.' This means that the state must prove beyond a reasonable doubt that the defendant intended to cause the death of another person; and that in accordance with that intent, the defendant caused the death of that person. . . ."

[7] The defendant mentioned plain error review but did not furnish analysis of his claim under this doctrine. Accordingly, we deem it abandoned. *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991).

beyond a reasonable doubt." Id. If any one of these conditions is missing, the defendant's claim will fail. Id., 240.

The relevant portion of the instruction commenced with the statement: "You must find proved beyond a reasonable doubt that Mr. Deis died as a result of the actions of the defendant. Next, you must conclude that the person causing the death of the victim must have done so with the intent to cause the death." The court then read the statutory definition of when a person acts intentionally. General Statutes § 53a-3 (11).[8] Six sentences later the trial court instructed that "[i]f you find that the state has proved beyond a reasonable doubt that the defendant had the intent to cause the death of and that having that intention to cause the death of Mr. Deis, the defendant did cause his death, then you may find the defendant guilty of the crime of murder." The court concluded this portion of its charge by commenting: "So let me just summarize by reading the statute. 'A person is guilty of murder, when, with intent to cause the death of another person, he causes the death of such person.' This means that the state must prove beyond a reasonable doubt that the defendant intended to cause the death of another person and that in accordance with that intent the defendant caused the death of that person."

When the court finished its instruction, defense counsel advised the court that the charge on intent was "proper" and "perfectly fine" with one exception. The court had used the example of drinking a glass of water to demonstrate intent, and defense counsel thought that may have been misleading.[9] The court recalled the

---

[8] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[9] During jury instructions the court drank a cup of water and said to the jury, "Now, if you were watching me, I didn't say a word. Could you fig-

jury and, after speaking of the water drinking example, told the jury, "I don't want to give you the impression that every time a course of conduct leads to a result that that's the intended result. I mean, that's for you to decide." The court repeated this clarification twice and defense counsel expressed satisfaction with it.

During its deliberations, the jury asked, inter alia, to rehear the definition of murder including the matter of intent. The court instructed the jury that the state had to prove two elements for a murder conviction, "[one] that the defendant intended to cause the death of another person and, two, that in accordance with that intent the defendant caused the death of that person."

The defendant's challenge to the charge on intent arose out of the trial court's reading of the statutory definition of intent from § 53a-3 (11). Even if it were improper, it would not destroy the propriety of the instruction as a whole.

Viewing the challenged language in isolation is unjustified. Immediately before first using that language, the court properly told the jury that it must find that the defendant had intended to cause the victim's death, and six sentences later reiterated that the jury may find the defendant guilty of murder if "the defendant had the intent to cause the death of . . . Mr. Deis [and] the defendant did cause his death."

It strains reason to believe that the jury could have heard the challenged instruction as not requiring that the state prove beyond a reasonable doubt that the defendant intended to kill Deis. Furthermore, the

ure from what I did, what I meant to do? Sure, I meant to have a drink of water. Now you didn't have to look inside my mind . . . to figure that out. How were you able to judge my intent? By simply observing my actions and the circumstances surrounding the event. That's the way you judge a person's intent . . . . It's all common sense."

court's reply to the jury question also properly informed the jury that the state must prove that the defendant possessed a specific intent to kill Deis.

It is axiomatic that a jury charge is to be read as a whole and that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Suggs,* 209 Conn. 733, 755, 553 A.2d 110 (1989); *State* v. *Washington,* 15 Conn. App. 704, 713, 546 A.2d 911 (1988). The test is whether the charge as a whole tended to mislead the jury. *State* v. *Quintana,* supra, 209 Conn. 44; *State* v. *Boone,* 15 Conn. App. 34, 55, 555 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988).

A similar issue was raised in *State* v. *Boles,* 223 Conn. 535, 541–43, 613 A.2d 770 (1992). The language of the *Boles* court is singularly applicable to the facts of this case. "[T]he trial court gave instructions, both prior and subsequent to the instruction at issue, that properly informed the jury that it had to find proven that the defendant intended to cause the victim's death before it could convict him of murder. . . . We conclude that the instruction of the trial court, on which the defendant focuses in isolation, did not, in the context of the entire charge, deprive him of his constitutional due process right to a fair trial nor did it result in an injustice. . . . Because there was no constitutional violation, the defendant does not have a valid claim for relief under *Golding.* Further, because there was no manifest injustice, the defendant's claim does not warrant plain error review." (Citations omitted.) Id., 543.

The defendant also argues that by reading the statutory definition of intent the trial court created a mandatory presumption of intent in violation of the principle laid down in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). In view

of our analysis of the charge as a whole, this conten-
tion does not merit further discussion.

The defendant has not satisfied the third *Golding*
prong[10] and is thus not entitled to further review of
his claim that the trial court improperly instructed the
jury on intent.

## IV

In his final claim, the defendant argues that the trial
court improperly failed to conduct an inquiry into the
significance of a remark made by a juror and overheard
by an attorney. The attorney, who was not involved
in the case, passed four or five jurors standing outside
the courthouse as he entered. The jurors appeared to
be "just talking about the weekend," when the attor-
ney overheard an unidentified female juror say "if she
feels pressured." That was all he heard. The attorney
reported this incident and explained the circumstances
to the trial court. The court, however, did not think
the incident "in any way taint[ed] the integrity of the
deliberations at all."

When possible concerns regarding juror misconduct
or improper influence are brought to the attention of
the court, it has a duty to determine whether and to
what extent, improper influence or undue pressure may
have violated the defendant's constitutional right to a
fair trial. *State* v. *Gonzalez,* 25 Conn. App. 433, 439,
596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d
1003 (1992). In the present case, however, the defend-
ant did not show that the snippet of overheard conver-
sation was related to this case in any way. It could just
as easily have been a comment referring to a person
other than a member of the jury who felt pressured in

---

[10] The third prong of *Golding* requires that "the alleged constitutional
violation clearly exists and clearly deprived the defendant of a fair trial
. . . ." *State* v. *Golding,* supra, 213 Conn. 239–40.

some way by the vicissitudes of life. The trial court acted within its discretion in not inquiring into the matter.

The judgment is affirmed.

In this opinion the other judges concurred.