STATE OF CONNECTICUT *v.* ANDREW J. LEDUC
(14304)

Dupont, C. J., and Heiman and Hennessy, Js.

Argued September 12, 1995—decision released January 2, 1996[*]

*Michael R. Hasse*, with whom, on the brief, was *Richard T. Miller*, certified legal intern, for the appellant (defendant).

*John P. Gravalec-Pannone*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, following a jury trial, of sexual assault in the first degree pursuant to General Statutes § 53a-70 (a) (2)[1] and risk of injury to or impairing the

---

[*] January 2, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 53a-70 provides in pertinent part: "Sexual assault in the first degree: Class B felony: One year not suspendable. (a) A person is

morals of a child pursuant to General Statutes § 53-21.[2] On appeal, the defendant claims that (1) the evidence was not sufficient to support the jury's verdict of guilty and (2) the trial court improperly refused to conduct an in camera inspection of confidential records maintained by the department of children and families (DCF).

The jury heard evidence from which they reasonably could have found the following facts. The defendant was involved in a dissolution of marriage action that included a dispute about custody of his children when the facts underlying the conviction are alleged to have occurred. The defendant had weekend visitation rights with his daughter, the victim, born July 20, 1988, and his son. He would pick up the children on Friday evenings and return them to their mother on Sunday.

Around June 12, 1992, the victim's mother noticed behavioral changes in the victim.[3] The victim reported to her mother and grandmother that the defendant had put his finger in her "lucy," the word by which the victim referred to her vagina, that it hurt, and that he would not stop. She also described this assault to a friend of her mother.

guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person. . . ."

[2] General Statutes § 53-21 provides: "Injury or risk of injury to, or impairing morals of, children. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] The mother claimed that on one occasion, the victim, after returning from a visit with her father, went inside her room, ripped up her dolls, and wet herself. The victim also exhibited anger, had nightmares, began wetting her bed, clung to people, was afraid of men and boys, and became nervous and got stomachaches before visitation with her father.

After confronting the defendant, who denied the accusations, the victim's mother took her to a counselor at ABC, a private counseling agency, who treated her once a week for symptoms relating to being sexually abused. Counseling for the victim began in March, 1993, and continued to the time of trial. While in counseling, the victim disclosed the incident she had previously described to her mother and grandmother, and the counselor reported the case to DCF. After investigating the claim, DCF closed its file without further action. The counselor again reported the matter to DCF because she felt DCF did not properly investigate the first claim. The second investigation was concluded without further action. On August 6, 1993, the victim's mother filed a complaint with the Norwich police department. Following an investigation, the defendant was arrested. The information charged that on "diverse dates June 12, 1992, through February 28, 1993 . . . he [had] engaged in sexual intercourse with the victim . . . by penetrating her vagina with his finger."

During the trial, the victim and several constancy of accusation witnesses testified. The victim testified that her father had put his finger in her "lucy," that his touch hurt, and that he would not stop. Although she did not identify the defendant in the courtroom as the person who assaulted her, she stated that "Uncle Andy" committed this act. Several witnesses testified that the victim referred to her father as "Uncle Andy." The jury returned a verdict of guilty of both crimes with which the defendant was charged. The trial court sentenced the defendant to eight years in prison, suspended after five years, and four years of probation.

## I

## SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence was insufficient for the jury to find the defendant guilty beyond

a reasonable doubt because the victim did not make an in-court identification of the defendant as the perpetrator. " 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' [*State* v. *Simino*, 200 Conn. 113, 116–17, 509 A.2d 1039 (1986)]." *State* v. *Summerville*, 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988).

Several witnesses corroborated the victim's account of the incident to which she testified. Although the victim, who was six years old at the time of trial, testified that her assailant was not in the courtroom, the record indicates that the defendant had gained weight, had changed his hairstyle, and had shaved his moustache since the victim had last seen him. The victim testified that the assault occurred in a brick building and that her "Uncle Andy" had committed the act. The defendant admitted to living in a brick building at the time of the incident, and several witnesses testified that the victim referred to him as "Uncle Andy."

The defendant argues that the victim's testimony fails to establish guilt because she stated that the perpetrator was not in the courtroom and, therefore, the jury must have improperly used the constancy of accusation witnesses' testimony for the truth of the matter asserted. Although the hearsay rule generally bars prior consistent statements if sought to be used for the truth of the matter asserted, several exceptions exist. *State* v. *Hamer*, 188 Conn. 562, 564, 452 A.2d 313 (1982). In sex-related criminal cases, witnesses may recount the details of statements made by the victim that relate the

particulars of the incident. Id., 564–65. The statements are admitted to corroborate the victim's testimony by showing constancy of accusation, but cannot be used to prove the truth of the matter asserted. Id.

The jury may, however, consider other testimony of a witness that is unrelated to constancy of accusation as long as it does not fall within the category of hearsay. In other words, a witness who testifies in order to corroborate a victim's accusations under this exception may testify about other matters, and the jury is not precluded from considering this testimony. In addition to testifying about prior consistent statements made by the victim, several witnesses testified that the victim referred to her father, the defendant, as "Uncle Andy." This testimony could be considered by the jury and does not fall within the definition of hearsay because these statements were not used to prove that the defendant's name was in fact Uncle Andy, but rather to show the name that the victim used to refer to the defendant. Statements that are not used to prove the truth of the matter asserted are not hearsay. *State* v. *Cruz*, 212 Conn. 351, 357, 562 A.2d 1071 (1989).

Looking at the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have identified the defendant as the perpetrator, and could have found guilt beyond a reasonable doubt based on the evidence presented by the state.

## II

### NECESSITY OF IN CAMERA INSPECTION

The defendant next argues that he had a due process right under the fourteenth amendment to the United States constitution to an in camera inspection of two

DCF files[4] to determine whether exculpatory information existed. He does not claim the right to the inspection because of his right to confrontation of witnesses under the sixth amendment to the United States constitution.

The defendant subpocnaed Theresa Bohara, a DCF investigator, and all DCF records of the two investigations relating to the accusations made against the defendant. On direct examination, the defendant solicited background information from the witness, but when the defendant asked the witness about the conclu-

---

[1] General Statutes § 17a-28 prohibits the release of records created or obtained in connection with child protection and care activities, with some exceptions. The following language from that statute is relevant to this case: "(b) Notwithstanding the provisions of section 1-19, 1-19a or 1-19b, records maintained by the department shall be confidential and shall not be disclosed. Neither the commissioner nor any of his employees shall disclose, in whole or in part, the nature or content of any records of any person to any individual agency, corporation or organization without the consent of the person, his attorney or his authorized representative, except as provided in subsections (c) and (d) of this section. Any unauthorized disclosure shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year, or both.

"(c) The commissioner or his designee shall, upon request, promptly provide copies of records, without the consent of a person, to the chief state's attorney or his designee or a state's attorney for the judicial district in which the child resides or in which the alleged abuse or neglect occurred or his designee, for purposes of investigating or prosecuting an allegation of child abuse or neglect. The commissioner shall disclose to such attorney any part of a record, whether or not created by the department, provided no confidential record of the superior court shall be disclosed, except upon an order of a judge of the superior court for good cause shown. . . .

\* \* \*

"(i) Information disclosed from a person's record shall not be disclosed further without the written consent of the person, except if disclosed to a party or his counsel pursuant to an order of a court in which a criminal prosecution or an abuse, neglect, commitment or termination proceeding against the party is pending. A state's attorney shall disclose to the defendant or his counsel in a criminal prosecution, without the necessity of a court order, exculpatory information and material contained in such record and may disclose, without a court order, information and material contained in such record which could be the subject of a disclosure order. . . ."

sions she had drawn from her investigation, the state's attorney objected, and the trial court sustained the objection. During the discussion of the objection, the defendant requested an in camera inspection of DCF records because he believed that exculpatory evidence might exist.[5] The trial court denied the request for an in camera review.

Although Connecticut courts have often addressed the issue of when an in camera inspection of records

[5] Upon objection to the request for an in camera inspection a dialogue took place, which indicated that the court and counsel were concerned with whether General Statutes § 17a-28 contains a qualified or absolute privilege of confidentiality and if the privilege is qualified, the purpose of the in camera inspection. The following is the dialogue:

"The Court: Is there some exception in the statute which would permit disclosure?

* * *

"Mr. Hasse [Defense Counsel]: It seems appropriate because there could be an in camera review of the documents that we have here.

"The Court: Where does the statute say that?

"Mr. Hasse: I believe one of the letters had said that.

"The Court: Well, it may have. I gather it did. Let's start at the beginning.

* * *

"The Court: Mr. Hasse, so we can get some focus here, make an offer of proof, what purpose?

* * *

"Mr. Hasse: There is a criminal prosecution pending. They did provide some investigation as to the initial complaints by the mother. They opened a file on it. They investigated. She talked to the child witness and the file was closed, and she noted that the status of the parties in the midst of the divorce was further—was a further reason why they closed the file because—

"The Court: How is that probative of the issue here as to whether or not [the defendant] committed the crime or crimes with which he is now charged?

"Mr. Hasse: I believe that DCF is probably, they are the agency in the state that regularly looks into this type of allegation, that is their function, that is what she is trained to do. She has done many of these things. She investigated in the way DCF does in the normal course of DCF's business and a file was opened, and an investigation was terminated as inconclusive. No additional disclosure. And that was right at the time the report was initially made. . . .

"The Court: As I understand it, the purpose of the in camera inspection is to see if there is any material that should be disclosed to the defendant. What should I be looking for?

is required if there is a confrontation claim, and have recognized a due process right to an in camera inspection in dicta, they have never squarely addressed the issues of this case. See *State* v. *Kulmac*, 230 Conn. 43, 58, 644 A.2d 887 (1994); *State* v. *Harris*, 227 Conn. 751, 764, 631 A.2d 309 (1993); *State* v. *Howard*, 221 Conn. 447, 457–58, 604 A.2d 1294 (1992); *State* v. *Simms*, 201 Conn. 395, 405 n.8, 518 A.2d 35 (1986); *State* v. *Jaynes*, 36 Conn. App. 417, 420, 650 A.2d 1261 (1994), cert. denied, 223 Conn. 908, 658 A.2d 980 (1995).

These issues are (1) whether, under any circumstances, the confidentiality of the records of DCF may be breached given the language of § 17a-28 and existing case law, and (2) whether, if the statutory privilege is qualified, thereby allowing an in camera inspection in some instances, the defendant has a due process right, after a showing sufficient for his particular need, to require the court to make an inspection for exculpatory material.[6]

---

"Mr. Hasse: I think subparagraph [i] of the statute talks about exculpatory material, material contained in such a record as may be disclosed through a disclosure order.

"The Court: After there has already been a disclosure and that goes to a further disclosure. I am not at the first point where there is any disclosure at all. How do I get to that?

"Mr. Hasse: There has been a disclosure from ABC [a private counseling agency hired by the child's mother], Mrs. Couillard, saying that they did make these reports and follow up with Mrs. Bohara and her supervisors.

"The Court: It doesn't disclose the commissioner's file though.

"Mr. Hasse: But it discloses what was told to the commissioner, the fact that they were given to investigate and they investigated, and they came back with some sort of a report or conclusions of that investigation. . . .

"The Court: Let me try to figure out, what are you trying to get to? Are you trying to impeach the child?

"Mr. Hasse: I would say more ABC in terms of their investigation, the conclusion of their investigation was different than DCF's.

"The Court: So the purpose of your subpoenaing DCF here today is to show that ABC—ABC's conclusions were wrong, not to attack the child's credibility.

"Mr. Hasse: No, I won't attack the child's credibility."

[b] This issue was posed in a footnote in *State* v. *D'Ambrosio*, 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880,

## A

### The Nature of the Privilege

We must first decide whether the records of DCF are absolutely privileged by the confidentiality provisions of § 17a-28 or conditionally privileged. The case of *State* v. *Kulmac*, supra, 230 Conn. 43, summarily determines that the records of DCF are subject to a qualified privilege by flatly stating that § 17a-28 (b) expresses "a broad legislative declaration of confidentiality" but that a defendant's right to confrontation "prevents such confidentiality from being unconditional." Id., 57. The case, therefore, recognizes that the statutory privilege is not absolute but, rather, is qualified. The only other Connecticut case dealing solely with the confidentiality of DCF records, *State* v. *Apostle*, 8 Conn. App. 216, 235, 512 A.2d 947 (1986), assumes that confidentiality can be breached because the court reviewed the decision of the trial court not to release any information *after* the trial court had conducted an in camera review. Nothing is said in *Apostle* about the lack of statutory authority to conduct an in camera review. See id., 235–39.

The decision in *State* v. *Howard*, supra, 221 Conn. 447, involves a request by a defendant for an in camera inspection of juvenile court records. The court notes that "[j]uvenile court records pertaining to neglect proceedings and encompassing information from [DCF] are confidential and subject to disclosure to third parties only upon court order." Id., 459 n.10. The Supreme Court concluded that although it would be improper to

107 L. Ed. 2d 963 (1990), but not decided. The case of *State* v. *Pratt*, 235 Conn. 595, 669 A.2d 562 (1995), also does not decide the issue. In *Pratt*, an in camera inspection by the trial court of material with a qualified statutory privilege had occurred with the consent of the witness involved, the defendant sought direct access to the material, and the material was sought for impeachment purposes. Id., 607. These facts are inapposite to the present case.

refuse to examine documents in camera if a sufficient foundation had been laid to indicate a reasonable likelihood that they contain information material to the case or useful for impeachment of a witness, the defendant had not made such a showing. Id., 450. Thus, the case also assumes that DCF records may be examined and released to a defendant if the records are relevant to the reason for the request.

General Statutes § 17a-28 (b) and (c) contain a qualified privilege of confidentiality in that there is contemplated a release of records by the commissioner of children and families, without the consent of the individual named in the records, to the chief state's attorney or his designee. Furthermore, General Statutes § 17a-28 (i) provides that "[a] state's attorney shall disclose to the defendant . . . in a criminal prosecution . . . exculpatory information and material contained in such record and may disclose, without a court order, information and material contained in such record which could be the subject of a disclosure order."

The language of the statutes and the case law noted in this opinion lead us to the conclusion that a trial court may conduct an in camera inspection of DCF records and release portions of the records in appropriate circumstances. The statute does not prohibit the disclosure of the records under any circumstances, absent the victim's consent. Indeed, if this conclusion were otherwise, the state's attorney could circumvent the need to reveal exculpatory information contained in DCF records, which might otherwise be required to be given to the defendant under the principles of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by simply not requesting or receiving such records.[7]

---

[7] There is no violation of *Brady* v. *Maryland*, supra, 373 U.S. 83, in the present case because the state's attorney is not in possession of the DCF records involved.

## B

### The Showing Necessary for the Inspection

Having concluded that DCF records are not the subject of an absolute statutory privilege, we must now decide if the defendant made a showing sufficient to obtain an in camera review based on due process grounds. The defendant does not claim he required the material for confrontation purposes[8] or that he was entitled to an in camera review prior to trial. The question of what triggers the defendant's right, on due process grounds, to an in camera inspection is a close one and its resolution depends on whether federal law, as expounded in *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), and Connecticut case law require an in camera inspection when a defendant claims the record may contain exculpatory material and premises that claim on the fact that the investigation of DCF involves the same incident that forms the basis of his criminal charges.

The facts and circumstances of this case are similar to those of *Pennsylvania* v. *Ritchie*, supra, 480 U.S. 39. The defendant, Ritchie, was charged with rape, involuntary deviate sexual intercourse, incest, and corruption of a minor, resulting from allegations made by his thirteen year old daughter. Id., 43. The victim reported the incidents to the police who referred her to children and youth services (CYS). Id.

During pretrial discovery, the defendant served CYS with a subpoena requesting access to the records gener-

---

[8] The defendant specifically stated that he did not wish to attack his daughter's credibility. This case, therefore, does not involve cases such as *Davis* v. *Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Connecticut cases, such as *State* v. *Kulmac*, supra, 230 Conn. 43, *State* v. *Howard*, supra, 221 Conn. 447, and *State* v. *Apostle*, supra, 8 Conn. App. 216, analyze the issue of in camera inspection when the claim is that the material is needed to attack the credibility of a witness.

ated as a result of the victim's consultations with CYS investigators. Id. CYS refused to comply and claimed that Pennsylvania law protected the record's confidentiality. Id. The file pertained to the charges brought against the defendant. The defendant argued that he was entitled to the records because the file "might contain the names of favorable witnesses, as well as other unspecified exculpatory evidence." Id., 44. The judge denied the request, and the jury convicted the defendant on all counts. Id., 45.

The defendant appealed to the Superior Court of Pennsylvania, which found that the denial of an in camera review violated the confrontation clause of the sixth amendment. Id. The Supreme Court of Pennsylvania affirmed the decision and also concluded that the defendant had a right to review the file for any exculpatory material. Id.

Although the Supreme Court of the United States refused to furnish a broad *pretrial* discovery rule in cases involving qualified, privileged material by invoking the sixth amendment's confrontation clause to allow in camera inspections, the court found such a *trial* right existed under the due process clause of the fourteenth amendment. "Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case." Id., 56. Under a due process analysis, rather than an analysis of a constitutional confrontation claim, the Supreme Court held that the defendant Ritchie was "entitled to have the CYS file reviewed by the trial court to determine whether it contains information that *probably* would have changed the outcome of the trial." (Emphasis added.) Id., 58.

The state argues that the defendant does not have a right to an in camera inspection of the DCF file because

the defendant failed to make a preliminary showing that the failure to conduct an in camera review impaired the defendant's right to confrontation. The state relies on *State* v. *Kulmac*, supra, 230 Conn. 58, but that reliance is misplaced because that case dealt with the defendant's right to an in camera inspection based on the confrontation clause of the sixth amendment, not on the due process clause of the fourteenth amendment to the United States constitution and "[i]n the absence of *any* preliminary showing of cause." (Emphasis added.) Id., 57.

In *Kulmac*, the defendant, asserting a sixth amendment right to confront the witnesses against him, requested an in camera inspection of a DCF file, which the trial court denied. Id., 56. The decision concludes that to argue successfully for an in camera inspection of a qualified confidential file, a defendant must make a showing that the refusal to perform an inspection impairs the defendant's right to confrontation. *Kulmac*, which was decided after *Ritchie*, makes no reference to *Ritchie*, presumably because *Kulmac* did not involve a claim of due process. Unlike the defendant in *Kulmac*, the defendant in the present case raises a claim that he has a due process right to an in camera review of a file for exculpatory evidence.

Our Supreme Court, as well as the United States Supreme Court, has recognized a due process right to require an in camera review of statutorily protected information, in the context of a prosecution's duty to disclose exculpatory information. "[A]n independent right to disclosure of exculpatory information exists under the due process clause of the Connecticut constitution. Conn. Const., art. I, § 8; see *Michigan* v. *Long*, 463 U.S. 1032, 1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1202 (1983)." *State* v. *Simms*, supra, 201 Conn. 405 n.8. *Ritchie* is an extension of that doctrine to material not in the possession of the prosecution.

In *State* v. *Harris*, supra, 227 Conn. 760, the defendant requested the qualified confidential personnel file of his accuser, which was not in the possession of the prosecution. The case does not involve the extent of the showing necessary to obtain an in camera review, but involves whether the trial court, after its in camera review, had released all relevant portions of the file to the defendant. Id., 761. Although the defendant in *Harris* asserted that his right to confrontation under the sixth amendment was violated by the pretrial denial of total access to his accuser's file, rather than his due process right to exculpatory information, the case is important because the trial court had concluded that the file contained no information useful for impeachment or *any other purpose*, and the Supreme Court, after its own review of the material, concluded that the trial court had released all material evidence and that the defendant's "due process rights were not violated." Id., 763. *Harris* acknowledged *Ritchie*'s holding "that due process provided a right to any exculpatory information contained in records that enjoyed a qualified privilege under state statute." Id., 764.

*Ritchie* does not expressly define the type of particularized showing necessary to obtain an in camera review, but the entitlement to the inspection in that case rested on the defendant's claim that "the file *might* contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." (Emphasis added.) *Pennsylvania* v. *Ritchie*, supra, 480 U.S. 44. Unlike many other cases in which privileged information is sought, both *Ritchie* and the present case relate to files that involve the defendants themselves and to an investigation of facts involving the very crime of which they stand accused. The particular showing by the defendant in *Ritchie* was his need to obtain a review of a file in which he was personally involved. The same need exists in the present case.

In his initial request for the DCF file, the defendant in this case stated that the file may contain exculpatory information because after speaking to the victim, DCF closed the file and did not pursue the charges. The investigation by DCF was initiated by a private investigative social agency hired by the child's mother. That agency is required by statute to report child abuse,[9] and it reported to DCF that it believed the child had been abused. When DCF closed its file without taking any action, the agency, being dissatisfied, again submitted the matter to DCF for further investigation. DCF conducted another investigation and again closed its file. As was stated in *Ritchie*, "[a]lthough the obligation to disclose exculpatory material *does not depend on the presence of a specific request*," the defendant must at least make some plausible statement of how the information would be both material and favorable to his defense. (Emphasis added.) Id., 58 n.15. On the basis of all of the circumstances of this case, we conclude that the defendant made a showing sufficient to trigger the in camera inspection requested.

*Ritchie* creates a broader right for an in camera inspection of qualified privileged documents under the due process clause of the fourteenth amendment than exists pursuant to the sixth amendment right of confrontation. We are bound by *Ritchie* because although we may grant greater protection of individual rights than is required by the federal constitution, federal constitutional law as expounded by the United States Supreme Court establishes a minimum national standard for the exercise of individual rights from which we may not deviate. *State* v. *Miller*, 227 Conn. 363, 379, 630 A.2d 1315 (1993). The defendant here has provided us with facts nearly duplicate to those in *Ritchie*. Those facts gave rise to a due process right in *Ritchie* and we cannot grant the defendant less.

---

[9] See General Statutes §§ 17a-101 and 17a-102.

A lack of knowledge about the credibility of a witness involves the constitutional right of confrontation. See *Davis* v. *Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). That lack of knowledge can be ameliorated by an extensive and effective cross-examination. A lack of any knowledge at all about the existence of exculpatory material can never be cured. We conclude, in accordance with *State* v. *Harris*, supra, 227 Conn. 764, and *Pennsylvania* v. *Ritchie*, supra, 480 U.S. 58, that the defendant, under the circumstances of this case, upon the request as made in this case, has a due process right to an in camera inspection of the qualified confidential reports of DCF, not in the possession of the prosecution, in order that the court may determine whether exculpatory evidence exists. The minimal national standard of *Ritchie* demands the conclusion.

While a defendant may have a due process right, upon request and after meeting a requisite threshold, to an in camera inspection of a qualified, confidential record, a defendant does not have a right to automatically receive such information. After performing an in camera inspection, the trial court is required to release only information that is material and favorable to the defense. *Pennsylvania* v. *Ritchie*, supra, 480 U.S. 57, citing *Brady* v. *Maryland*, supra, 373 U.S. 87; see also *State* v. *Quintana*, 209 Conn. 34, 37, 547 A.2d 534 (1988); *State* v. *Jaynes*, supra, 36 Conn. App. 420.

"Favorable evidence is that evidence which . . . might have led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist. . . . On the other hand, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed.

2d 481 (1985); *State* v. *Rasmussen*, [225 Conn. 55, 92, 621 A.2d 728 (1993)]; *State* v. *Pollitt*, 205 Conn. 132, 142–43, 531 A.2d 125 (1987)." (Citations omitted; internal quotation marks omitted.) *State* v. *Jaynes*, supra, 36 Conn. App. 421–22. If the information discovered during an in camera inspection "probably would have changed the outcome of [a] trial" the defendant must be given a new trial. *Pennsylvania* v. *Ritchie*, supra, 58.

The case is remanded to the trial court for an in camera review of the DCF files. In the event that the trial court finds any evidence in the DCF record that is material and favorable to the defendant's case, the information must be disclosed to the defendant, the judgment is reversed and the defendant is entitled to a new trial; if the files do not contain any exculpatory material, the judgment is affirmed.

In this opinion the other judges concurred.