STATE OF CONNECTICUT *v.* LEO THOMAS BUTLER
(12382)

LANDAU, HEIMAN and SPEAR, Js.

Argued October 31, 1994—decision released January 3, 1995

*Louis S. Avitabile,* with whom was *Meryl Anne Spat,* for the appellee (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John Connelly,* state's attorney, and *Robin Lipsky,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21.[1] On appeal, the defendant claims that the trial court improperly (1) permitted a hospital social worker to testify as to her opinion of whether the victim was truthful regarding the claims of sexual abuse, (2) permitted an expert to testify as to (a) behavioral pattern profile responses of victims of sexual abuse, (b) con-

---

[1] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be [punished]."

sistencies in the behavior of the victim with sexually abused children in general, and (c) his opinion with regard to the number of children he had treated for sexual abuse who had fabricated their stories, and (3) charged the jury with respect to the meaning of the term reasonable doubt.

The jury could reasonably have found the following facts. The victim was born on April 27, 1977. When she was about five years of age, her parents divorced. As a result, the victim, along with her mother and younger brother, moved to Wolcott to live with the victim's grandmother and grandfather, the defendant. For the first several years that she lived with her grandparents, the victim shared a room with her mother and her aunt. When she reached the age of seven or eight, however, she was given a room of her own. Throughout the time that she lived in Wolcott, her grandparents occupied separate bedrooms.

At the time that the victim began sleeping in her own bedroom, the defendant began to come into her room late at night. The victim was awakened on several occasions by the defendant standing over her bed masturbating. Often the defendant was completely naked, while at other times he wore only underwear. On several occasions, the defendant touched the victim on the breast and vaginal areas. In addition, there were incidents when the defendant placed the victim's hand on his penis.

Each time that the defendant came into the victim's bedroom, the victim pretended to be asleep. Often, the victim, who slept in sweatpants and a tee-shirt, awoke to find that her clothing had been removed during the night. Moreover, on a number of occasions, the defendant called to the victim to come into his bedroom. At these times, the victim saw the defendant lying naked on his bed masturbating and refused to enter the room.

The defendant warned the victim not to tell anyone of his actions if she still wanted to see her mother and brother. When the victim was about twelve years of age, she received classroom instruction concerning what should be done if someone touches another person inappropriately or acts inappropriately. She was taught that it is not the fault of the victim and that the child should report such actions to a responsible adult. After hearing the lecture, the victim reported the defendant's conduct to her mother and grandmother. From that time on, the victim shared a bedroom with her grandmother and the problems with her grandfather ceased.

In May, 1991, the victim was hospitalized at the Waterbury Hospital Health Center as a result of a suicide attempt involving the ingestion of an overdose of pills. She remained in the hospital for several weeks. While there, the Wolcott police department was notified that the victim may have been sexually abused. Detective Roger Picard interviewed the victim and the defendant was thereafter arrested.

I

The defendant first claims that the trial court improperly permitted a hospital social worker to testify as to her opinion of whether the victim was truthful regarding the claims of sexual abuse. We agree.

The following additional facts are necessary to the resolution of this issue. Carol L. Cestaro, a social worker with the Waterbury Hospital Health Center, was called as a witness by the state. At the time of the victim's hospitalization, Cestaro worked in the adolescent inpatient psychiatric unit. While working in that unit, Cestaro had an opportunity to treat a number of adolescents with a history of sexual abuse, including the victim.

Cestaro testified as to the circumstances surrounding the victim's suicide attempt, as told to her by the victim. She also testified to what the victim had told her regarding sexual abuse by the victim's grandfather, the defendant. Cestaro was then asked questions by the state's attorney regarding whether Cestaro had formed an opinion as to whether the victim's story was truthful or a fabrication. The defendant objected to that questioning, but his objections were overruled.[2]

The defendant asserts that it was improper for the trial court to permit this testimony to stand because the truthfulness of the victim's claims were the ultimate issue to be determined in the case. We agree.

---

[2] The following are the questions and answers at issue:

"Q. [By Assistant State's Attorney] Based on your treatment of her, do you have any indication that her story of the sexual abuse was any type of a fantasy or fabrication on her part?

"A. None

"Q. Can you explain this to me?

"[Defense Counsel]: Objection.

"The Court: I'm going to overrule the objection.

"[Defense Counsel]: May I have an exception?

"The Court: Exception may be noted.

"Q. You can answer the question.

"A. I never got the sense from her that she was fabricating or making up the story. One, because she was so consistent, I think. Two, because of her reluctance to disclose actual details and her humiliation and shame and embarrassment around even talking about having been sexually abused. *I felt that what she was saying was true.* [Emphasis added.]

"[Defense Counsel]: I move that be stricken. Again, you are getting an opinion. Its the ultimate question of fact in this case.

"The Court: She had asked her whether she had formed an opinion relative to that. I'm going to overrule your objection and you may have an exception. It's not going to be stricken from the record.

"[Defense Counsel]: May I have an exception?

"The Court: Exception may be noted.

"Q. You indicated one of the reasons that you did not believe that it was a fabrication or fantasy was her inability to disclose a lot of the specifics. What do you mean by that?

"A. Well, I think that if she had been fabricating, she would have talked about the details. I mean, she is old enough to know the different parts of the body. I think that she is old enough in her early teenage years to

## A

" 'Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues.' " *State* v. *Borrelli*, 227 Conn. 153, 165, 629 A.2d 1105 (1993), quoting *State* v. *Spigarolo*, 210 Conn. 359, 376, 566 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). However, " '[a]n expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by a trier of fact.' " *State* v. *Smith*, 35 Conn. App. 51, 70, 644 A.2d 923 (1994), quoting *State* v. *Vilalastra*, 207 Conn. 35, 41, 540 A.2d 42 (1988).

The determination of the credibility of a witness is solely the function of the jury. *State* v. *Smith*, 200 Conn. 544, 550, 512 A.2d 884 (1986); *State* v. *Robins*, 34 Conn. App. 694, 706, 643 A.2d 881, cert. granted on other grounds, 231 Conn. 917, 648 A.2d 166 (1994). "It is the trier of fact which determines the credibility of witnesses and the weight to be accorded their testimony." *State* v. *Carter*, 196 Conn. 36, 45, 490 A.2d 1000 (1985). Expert witnesses cannot be permitted to invade the province of the jury by testifying as to the credibility of a particular witness or the truthfulness of a particular witness' claims. See *State* v. *Freeney*, 228 Conn.

---

be able to talk about masturbation or penis and vagina. I would think that if she were fabricating, she may have been able to embellish, so to speak, her story, but again her reluctance to talk about details and her shame and embarrassment around it again indicated to me that was being truthful in what she was saying.

"[Defense Counsel]: Again, I would object to this line of questioning. I would move to have it stricken.

"The Court: All right, your objection is overruled.

"[Defense Counsel]: May I have an exception?

"The Court: Exception may be noted."

582, 592, 637 A.2d 1088 (1994), citing *State* v. *Borrelli*, supra, 227 Conn. 174; *State* v. *Spigarolo*, supra, 210 Conn. 379–80.

In cases that involve allegations of sexual abuse of children, our Supreme Court has held that expert testimony of reactions and behaviors common to victims of sexual abuse is admissible. *State* v. *Spigarolo*, supra, 210 Conn. 380. Such evidence assists a jury in its determination of the victim's credibility by explaining the typical consequences of the trauma of sexual abuse on a child. Id., 378. It is not permissible, however, for an expert to testify further to her opinion of whether a victim in a particular case is credible or that a particular victim's claims are truthful. Id., 379; *In re Noel M.*, supra, 23 Conn. App. 410, 423, 580 A.2d 996 (1990).

Here, Cestaro was permitted to testify that she "never got the sense that [the victim] was fabricating or making up the story," and that she "felt that what [the victim] was saying was true." Clearly, such testimony involves an assertion by an expert witness that validates the truthfulness of the purported victim. We thus conclude that the trial court abused its discretion in permitting this testimony to stand.

B

Our conclusion that the trial court abused its discretion in admitting the improper evidence does not, however, end our inquiry. Where an evidentiary ruling has been found to be incorrect, but the improper ruling, as here, does not implicate a constitutional right of the defendant, the burden rests on the defendant to establish the harmfulness of the claimed impropriety. *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994); *State* v. *Merritt*, 36 Conn. App. 76, 92, 647 A.2d 1021, cert. granted on other grounds, 231 Conn. 926, 648 A.2d 165 (1994).

In order to establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. *State* v. *Chapman*, supra, 229 Conn. 544. "The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986); see also *State* v. *DePastino*, 228 Conn. 552, 567, 638 A.2d 578 (1994).

We conclude that the improper action of the trial court was likely to have affected the result and, therefore, was harmful to the right of the defendant to a fair trial. There was no physical or medical evidence linking the defendant with the alleged crime. The entire case offered by the state consisted of the testimony of the victim, testimony of other witnesses offered only under the theory of constancy of accusation, and testimony of a psychologist as to the general behavioral characteristics of victims of child sexual abuse under *State* v. *Spigarolo*, supra, 210 Conn. 380. Against this array was the testimony of the defendant, denying the victim's claims of sexual abuse. The entire fabric of the state's case against the defendant turned, therefore, on the credibility of the victim and on which version of the facts the jury chose to believe.

We thus conclude that since the entire case turned on the issue of the credibility of the victim, Cestaro's testimony vouching for the truthfulness of the victim affected the outcome of the trial and denied the defendant his right to a fair trial. *State* v. *Brown*, supra, 199 Conn. 25. Thus, the defendant's conviction cannot stand.

## II

The defendant next claims that the trial court improperly permitted an expert to testify as to (1) behavioral

pattern profile responses of victims of sexual abuse, (2) consistencies in the behavior of the victim with sexually abused children in general, and (3) his opinion as to how many children he had treated for sexual abuse had fabricated their stories.[3]

The following facts are necessary to the resolution of this issue. Sidney Horowitz, a child psychologist, was called to testify on behalf of the state. Horowitz testified that victims of sexual abuse often exhibit such characteristics as depression, moodiness, sleep and appetite problems, bedwetting, difficulty concentrating, and low self-esteem. The defendant objected, asserting that the state's line of questioning was irrelevant because the characteristics testified to could apply equally to children who have suffered other kinds of trauma, such as physical or psychological abuse, and did not relate only to victims of sexual abuse. After an offer of proof, the defendant's objection was overruled and Horowitz was permitted to testify. The psychologist was precluded, however, from testifying that the existence of some or all of these characteristics necessitated a finding that a child was the victim of sexual abuse. The continued direct examination also revealed to the jury that the characteristics listed were often present in children who suffered other abuse or trauma, and were not limited to victims of sexual abuse.

Horowitz was then asked whether his review of the police report and arrest warrant in this case disclosed information that was characteristically common to many victims of sexual abuse. The defendant objected that the line of questioning was highly prejudicial as it allowed an expert to give an opinion as to the ultimate fact to be determined. The objection was over-

---

[3] Although our decision in part I requires reversal, we address the portion of this claim that is properly preserved and likely to arise again on remand. See State v. Skipper, 228 Conn. 610, 624–25, 637 A.2d 1101 (1994).

ruled and Horowitz testified that there were three elements in this case that were consistent with reactions of child victims of sexual abuse: (1) the victim revealed the abuse after a personal safety course given at school; (2) the victim was involved in self-injurious behavior such as the suicide attempt; and (3) the victim had difficulty describing the details of what had happened to her.

At another point in the direct examination, the state's attorney asked Horowitz how many of the victims he treated did he think had fabricated their claims. The defendant objected that a response to such a question would involve a personal survey by Horowitz without the jury's having access to the methods that he used to make such a determination. This objection was also overruled. Horowitz testified that he believed that fewer than ten of the hundreds of children he had treated had fabricated their claims of sexual abuse. He further testified that fabricated claims usually appeared rehearsed and were related by the child without emotion.

A

The defendant's first claim with respect to Horowitz' testimony is that his testimony of common behavioral responses of victims of sexual abuse was irrelevant.[4] The defendant rests his claim on the fact that the characteristics testified to by Horowitz are also found in children who have not suffered sexual abuse, but who have suffered other forms of trauma. We do not agree that the testimony was irrelevant.

---

[4] In his brief, the defendant also claims that the characteristics listed by Horowitz constitute child sexual abuse syndrome and that such testimony has been found unreliable in other jurisdictions. This objection was not made at trial. " 'This court reviews rulings solely on the ground on which the party's objection is based [at trial].' " *State* v. *Robinson*, 227 Conn. 711, 740, 631 A.2d 288 (1993), quoting *State* v. *Manning*, 162 Conn. 112, 118, 291 A.2d 750 (1971); see Practice Book § 288. We, therefore, review this claim only on the grounds of relevancy.

" 'The trial court has broad discretion to determine the relevancy of evidence, and we will not disturb a trial court's ruling on the admissibility of evidence in the absence of a clear abuse of discretion.' " *State* v. *Gant*, 231 Conn. 43, 58, 646 A.2d 835 (1994). "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." (Internal quotation marks omitted.) *State* v. *Ulen*, 31 Conn. App. 20, 28, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993), quoting *State* v. *Boucino*, 199 Conn. 207, 228, 506 A.2d 125 (1986); *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985).

Horowitz' testimony regarding common behavioral responses of child victims of sexual abuse was relevant to the jury's determination of whether the victim was sexually abused. See *State* v. *Freeney*, supra, 228 Conn. 592; *State* v. *Spigarolo*, supra, 210 Conn. 378–79. Such testimony can aid a jury in assessing the claims of a witness who has alleged a sexual assault by calling to the jury's attention typical reactions to such abuse. See *State* v. *Freeney*, supra, 592; *State* v. *Spigarolo*, supra, 378–79.

The fact that many of the behavioral characteristics exhibited by victims of sexual abuse are also exhibited by children who have suffered other types of trauma does not render such evidence any less relevant. "[T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be

construed in such a manner that it would be relevant, it is admissible." (Internal quotation marks omitted.) *State* v. *Sauris*, 227 Conn. 389, 406–407, 631 A.2d 238 (1993).

The defendant contends further that even if this testimony was relevant, it should have been excluded because its probative value was outweighed by its prejudicial effect. "The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." *State* v. *Crafts*, 226 Conn. 237, 255, 627 A.2d 877 (1993). A trial court's determination of the admissibility of such evidence will not be overturned on appeal unless there is a clear abuse of discretion. *State* v. *Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993); *State* v. *Grant*, 33 Conn. App. 133, 142, 634 A.2d 1181 (1993).

The defendant has not shown how the psychologist's testimony would elicit an emotional response from the jury. Horowitz merely listed various characteristics that his studies had shown were typical of children who had suffered sexual abuse. In addition, Horowitz made clear, both on direct and on cross-examination, that the characteristics listed were also exhibited by children who suffered other forms of abuse. We cannot say that the trial court abused its discretion when it determined that the probative value of Horowitz' testimony was not outweighed by any prejudicial effect.

The trial court did not abuse its discretion by admitting the testimony of Horowitz concerning common behavioral characteristics of child victims of sexual abuse.

### B

The defendant next claims that the trial court improperly allowed Horowitz to testify to consistencies in the

behavior of the victim with sexually abused children in general. In support of this claim, the defendant posits that Horowitz' testimony interfered with the jury's duty to assess the credibility of the victim and went to an ultimate issue of fact to be determined by the jury. We disagree.

In *Freeney*, our Supreme Court upheld the admission of expert testimony that the victim's behavior was consistent with that of victims of sexual assault. In so doing, the court reiterated the language of *State* v. *Borrelli*, supra, 227 Conn. 174, that the "expert testimony was properly admitted to assist the jury in understanding, not whether [the victim] was a credible witness on the witness stand, but whether her conduct . . . was consistent with the pattern and profile of [an abused person]. . . . [T]he expert testimony did not invade the province of the jury in determining the credibility of witnesses. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Freeney*, supra, 228 Conn. 592.

The testimony of Horowitz that the victim exhibited three responses that were typical of victims of sexual abuse was, therefore, properly admitted.

C

The defendant's final claim regarding the testimony of Horowitz is that the trial court improperly admitted his testimony that very few of the children he had treated had fabricated their claims of sexual abuse. The defendant objected to the admissibility of this testimony on the basis of a claim that the jury could not evaluate the reliability of Horowitz' survey. We decline to afford review because the defendant did not state any legal basis for the objection.

At trial, the defendant stated only that the testimony constituted a personal survey by the witness and that

it was not clear how that survey was conducted.[5] We note also that the defendant has failed to cite any Connecticut law in his brief to support this contention.

We will not review a claim that is not distinctly raised at trial. Practice Book §§ 288, 4185; *State* v. *Anderson*, 28 Conn. App. 833, 844, 614 A.2d 438 (1992). The defendant's failure to state the legal grounds on which he based his objection deprived the trial court of the opportunity to address adequately the issue while there was time to correct it and denied this court an adequate record to review the claim. *Misiurka* v. *Maple Hill Farms, Inc.*, 15 Conn. App. 381, 385–86, 544 A.2d 673, cert. denied, 209 Conn. 813, 550 A.2d 1083 (1988).

We, therefore, decline to review the defendant's claim that the trial court improperly admitted the psychologist's testimony regarding the number of children who fabricate claims of sexual abuse.

### III

The defendant also claims that the trial court improperly charged the jury on the meaning of reasonable doubt. In light of our disposition of the case in part I of this opinion, we need not and do not address this issue.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[5] The defendant's objection follows:

"[Assistant State's Attorney]: [O]ut of the hundreds of victims that you indicated you had treated or spoken with, [with] approximately how many of these victims did you feel there might be an issue of fabrication?

"[Defense Counsel]: Objection, Your Honor, goes into a personal survey of him. We don't know what tools he used in order to make a determination, Your Honor.

"The Court: I am going to overrule the objection to the extent it reflects his own personal experience and analytical practice of child abuse and child neglect where there is an indication that there may be a fabrication. I think that's an appropriate area to explore in light of defense counsel's cross-examining the witness relative to that particular issue.

"[Defense Counsel]: May I have an exception?"