# STATE OF CONNECTICUT *v.* DAVID GRENIER
## (AC 18211)

Foti, Schaller and Daly, Js.

Argued May 27—officially released November 9, 1999

*Moira L. Buckley,* with whom, on the brief, was *F. Mac Buckley,* for the appellant (defendant).

*Lawrence J. Tytla,* senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, and *John P. Gravalec-Pannone,* former senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, David Grenier, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1993) § 53a-70 (a) (2)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[2] On appeal, the defendant claims that the trial court improperly (1) permitted the testimony of certain expert witnesses regarding the credibility of the victim, (2) admitted constancy of accusation evidence, (3) declined to conduct an in camera inspection of the mental health records of the victim and (4) determined that there was sufficient evidence to support the jury's verdict of guilty. We affirm the judgment of the trial court.

---

[1] General Statutes (Rev. to 1993) § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age . . . ."

[2] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The jury reasonably could have found the following facts. The victim, S, was born on November 11, 1989. In 1993, the defendant lived with his mother, who is S's maternal grandmother. The defendant is the half-brother of S's mother. Also living with the defendant and his mother were S's great-grandmother and great-aunt. The defendant occupied two rooms in the house, one upstairs and one downstairs. In a downstairs room, known as "David's room," the defendant kept expensive electronic equipment and did not permit S's cousins of similar age in the room. S, however, was allowed into the defendant's room.

S and her mother visited the house at least every other weekend. During their visits, S's mother sometimes ran errands and left S at the house while the defendant was home. During a visit in the summer of 1993, S disclosed to her grandmother that the defendant had licked her vagina.[3] S's grandmother repeated to her daughter, S's mother, what S had told her. Later that day, when S's father came home, S's mother told him about S's disclosure. Sometime thereafter, S disclosed to both of her parents that "Uncle David" had sexually assaulted her in his room.

Rather than call the police, S's parents wanted to handle the incident as a family matter. A family meeting was held in September, 1993, at the home of S's parents at which the defendant, the defendant's brother and S's grandmother were present. During the meeting, S's father accused the defendant of sexually assaulting his daughter. The defendant was upset about the allegations but offered to pay for S's counseling if she needed any.

---

[3] The phrase used by S to describe the incident was that the defendant had licked her on her "heinie." S's mother testified that S would sometimes refer to her vagina as her heinie. At trial, S testified that "[Uncle David] touched [her private area] with his hands and his tongue."

Following the summer of 1993, S's parents observed S acting in a sexually inappropriate manner for her age. In first grade, S began to see a counselor because of her behavior in school, where she would act inappropriately and talk about having sex. On February 6, 1996, S was evaluated at the Northeastern Connecticut Sexual Assault Crisis Services in Willimantic, where she told Kimberly Herwerth, a certified child counselor, that the defendant had had sex with her. Herwerth contacted the department of children and families and referred S to Deborah McGeehan, a clinical psychologist, for play therapy. During one of their play sessions, S told McGeehan that the defendant had sexually abused her. McGeehan testified that S's behavior during their play sessions was consistent with that of a child who had been sexually abused.

At trial, the defendant testified that he had been falsely accused. He testified that in the beginning of 1993, S had a tantrum in front of him after he repeatedly told her to stop poking him with a toy. The defendant also testified that in early 1993, he and S's father had a serious work-related argument that resulted in the defendant leaving his employment with S's father. The defendant maintained that he did not commit the acts with which he was charged.

On November 12, 1997, the jury returned a verdict of guilty on both counts. The court sentenced the defendant to a total effective sentence of eight years imprisonment, suspended after four years, and ten years probation. This appeal followed. Additional facts will be set forth as they become relevant in the context of the defendant's claims.

I

The defendant first claims that he was denied due process of law when the trial court improperly allowed the state's expert witnesses, Herwerth and McGeehan,

to testify on the ultimate issue of the case, S's credibility. We conclude that the admission of such testimony was not harmful to the defendant and does not warrant a new trial.

The following additional facts are necessary to the resolution of this issue. On direct examination by the state, Herwerth testified that she was a certified child counselor, advocate and interviewer who specialized in child sexual abuse. Herwerth stated that she had received extensive training in the areas of child sexual abuse, interviewing techniques and child development issues. She further testified that she had treated more than 900 children who complained of being victims of sexual assault or abuse.

During her testimony, Herwerth explained the nature of her relationship with S. In response to the state's question whether S had provided her with any details regarding the sexual assault, Herwerth testified that S had and that "[her] statements were very credible." The defendant's objection to this testimony was overruled.[4] The state went on to ask Herwerth what the term play therapy meant, and Herwerth answered that S was referred to play therapy so that she could "understand

---

[4] The following colloquy took place:

"[Assistant State's Attorney]: And did [S] tell you that she had been the victim of sexual assault?

"[Herwerth]: Yes. [S] told me that she had had sex.

"[Assistant State's Attorney]: And did she indicate who had done that to her?

"[Herwerth]: Yes.

"[Assistant State's Attorney]: And who was that?

"[Herwerth]: She told me her Uncle David.

"[Assistant State's Attorney]: Okay. And did she provide you with any details regarding this alleged sexual assault?

"[Herwerth]: Yes. *[S's] statements were very credible.* She used a lot of sensory detail.

"[Defense Counsel]: Objection, Your Honor . . . .

"The Court: All right. I'm going to allow it . . . . Exception is noted." (Emphasis added.)

what has happened to her . . . ."[5] Although the defendant now argues that this statement was improper, he did not object to it at trial.

During cross-examination, after the jury was excused from the courtroom, the court reviewed the contents of a bench conference that had occurred prior to Herwerth's testimony in which defense counsel had stated that he would "object to [expert] testimony on the basis of credibility and ultimate issue." Thereafter, defense counsel moved to strike all of Herwerth's testimony and requested a curative instruction on the ground that her testimony that "[S's] statements were very credible" went to the ultimate issue and usurped the fact finder's function. The court denied the defendant's motion to strike, but directed the parties to draft proposed curative instructions. The defendant failed to provide the court with a proposed instruction as requested.

The next expert witness to testify for the state was McGeehan. McGeehan testified that she was a licensed clinical psychologist who specialized in working with children who have been sexually abused. McGeehan stated that she had treated approximately 200 children who complained of being the victims of sexual assault or abuse.

---

[5] The following colloquy occurred:

"[Herwerth]: The second to last session that I had with [S] I recommended that she get involved in play therapy . . . .

"[Assistant State's Attorney]: And by play therapy, again for everyone's benefit, what does that mean? What is the terminology as used in your business?

"[Herwerth]: Well, my work with [S] went only as far as doing some crisis intervention counseling, and she was assessed as needing something more in depth and that would be a place where she could go and play, not necessarily talk about all of the things that she has already disclosed, but talk about her feelings and play them out *so that she could understand what has happened to her* and how she can appropriately handle this in the future." (Emphasis added.)

During her testimony, McGeehan described the different types of behavioral characteristics often exhibited by children who complain of being the victims of sexual abuse. The state then asked McGeehan for the basis of Herwerth's referral of S to her. McGeehan replied that Herwerth had referred S to her because Herwerth felt that S "needed to recover from the abuse."[6] Although the defendant now argues that this statement was improper, he did not object when it was made. When the state next asked McGeehan what she was treating S for, McGeehan responded that she was treating S for, inter alia, "the trauma of the abuse that she experienced." The defendant's objection to this testimony was overruled.[7]

[6] The following colloquy took place:

"[Assistant State's Attorney]: Doctor [McGeehan], have you had occasion to treat a patient by the name of [S]?

"[McGeehan]: Yes, I have.

"[Assistant State's Attorney]: And was this as a result of a referral?

"[McGeehan]: Yes, it was.

"[Assistant State's Attorney]: And who was the referral by?

"[McGeehan]: The referral came through a woman by the name of Kim [Herwerth] at [Northeastern Connecticut Sexual Assault Crisis Services].

"[Assistant State's Attorney]: What was the basis of the referral?

"[McGeehan]: There was a suspicion that [S] had been sexually abused and that [Herwerth] could not provide the long-term treatment *she felt that [S] needed to recover from the abuse.*" (Emphasis added.)

[7] The following colloquy occurred:

"[Assistant State's Attorney]: And when did you start seeing [S]?

"[McGeehan]: In April of 1996.

"[Assistant State's Attorney]: And to this day, today, do you continue to treat [S]?

"[McGeehan]: Yes, I do.

"[Assistant State's Attorney]: And from the first time you saw her until today, approximately how many sessions have you had with [S]?

"[McGeehan]: Approximately [twenty-five] sessions.

"[Assistant State's Attorney]: Okay. And what are you treating [S] for?

"[McGeehan]: It's a combination of her inappropriate behavior, which continues today. It has to do with sexual acting out with other children, comments of a sexual nature and also *to treat the trauma of the abuse that she experienced.*

"[Defense Counsel]: Your Honor, I'm going to object to that as conclusory . . . ." (Emphasis added.)

The defendant argues that it was improper for the trial court to permit these four statements by the two expert witnesses because the truthfulness of S's claims was the ultimate issue to be determined by the trier of fact. We will address the defendant's unpreserved claims first.

## A

With regard to Herwerth's answer that S was referred to play therapy so that she could "understand what has happened to her"[8] and McGeehan's reply that Herwerth felt that S "needed to recover from the abuse,"[9] the defendant failed to object to these statements at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[10] or, alternatively, under the plain error doctrine. We conclude that the defendant cannot prevail under either of these standards.

While the record before us is adequate for review, the defendant has failed to meet the second prong of *Golding* because his claim of evidentiary impropriety is not one of constitutional magnitude. "[T]he admissibility of expert testimony is a matter of state evidentiary law that, in the absence of timely objection, does not warrant appellate review under [*Golding*] . . .

---

[8] See footnote 5.

[9] See footnote 6.

[10] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant [in] the particular circumstances." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 631 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

because it does not, per se, raise a question of constitutional significance." (Citation omitted.) *State* v. *Joyner*, 225 Conn. 450, 480, 625 A.2d 791 (1993); *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988); *State* v. *Cardany*, 35 Conn. App. 728, 740, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994). "Moreover, we have declined to attach constitutional significance to the erroneous admission of expert testimony concerning an ultimate fact." *State* v. *Campbell*, 225 Conn. 650, 657, 626 A.2d 287 (1993); *State* v. *Cardany*, supra, 740.

Simply put, the defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Vilalastra*, supra, 207 Conn. 46. "[I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997). Because the defendant has failed to allege a claim of constitutional magnitude, we decline to afford review under *Golding*.

We next consider whether this issue is entitled to plain error review. "Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks

constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *State* v. *Connelly*, 46 Conn. App. 486, 511, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998). On the basis of our review of the record, we conclude that the admission of these statements by the expert witnesses was not harmful, and did not affect the fairness and integrity of, or the public confidence in, the judicial proceedings and, therefore, did not constitute plain error.

## B

The defendant properly preserved his claims with regard to the remaining two statements made by the expert witnesses and, therefore, is entitled to review. The defendant asserts that these statements were improper because they involved, either directly or indirectly, assertions by the witnesses that validated the truthfulness of S's testimony.

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). "The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986). "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . *State* v. *Borrelli*, 227 Conn. 153, 165, 629 A.2d 1105 (1993) . . . . An expert witness [however] ordinarily may not express

an opinion on an ultimate issue of fact, which must be decided by the trier of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 35 Conn. App. 51, 69–70, 644 A.2d 923 (1994), quoting *State* v. *Vilalastra*, supra, 207 Conn. 41.

"The determination of the credibility of a witness is solely the function of the jury. *State* v. *Smith*, 200 Conn. 544, 550, 512 A.2d 884 (1986); *State* v. *Robins*, 34 Conn. App. 694, 706, 643 A.2d 881 [(1994), aff'd, 233 Conn. 527, 660 A.2d 738 (1995)]. It is the trier of fact which determines the credibility of witnesses and the weight to be accorded their testimony. *State* v. *Carter*, 196 Conn. 36, 45, 490 A.2d 1000 (1985). Expert witnesses cannot be permitted to invade the province of the jury by testifying as to the credibility of a particular witness or the truthfulness of a particular witness' claims. See *State* v. *Freeney*, 228 Conn. 582, 592, 637 A.2d 1088 (1994), citing *State* v. *Borrelli*, supra, 227 Conn. 174; *State* v. *Spigarolo*, supra, 210 Conn. 379–80.

"In cases that involve allegations of sexual abuse of children, our Supreme Court has held that expert testimony of reactions and behaviors common to victims of sexual abuse is admissible. *State* v. *Spigarolo*, supra, 210 Conn. 380. Such evidence assists a jury in its determination of the victim's credibility by explaining the typical consequences of the trauma of sexual abuse on a child. Id., 378. It is not permissible, however, for an expert to testify further to her opinion of whether a victim in a particular case is credible or that a particular victim's claims are truthful. Id., 379; *In re Noel M.*, 23 Conn. App. 410, 423, 580 A.2d 996 (1990)." (Internal quotation marks omitted.) *State* v. *Butler*, 36 Conn. App. 525, 530–31, 651 A.2d 1306 (1995).

1

The defendant claims that Herwerth's statement that "[S's] statements were very credible" was a direct assertion that validated the truthfulness of S's testimony. We agree.

The defendant argues that the present case is controlled by our decision in *State* v. *Butler*, supra, 36 Conn. App. 525. In *Butler*, the state presented an expert, Carol L. Cestaro, a social worker, who had treated a number of adolescents with a history of sexual abuse, including the victim in that case. Id., 528. Cestaro was asked by the state's attorney whether she had formed an opinion as to whether the victim's story was truthful or fabricated. Id., 529. Over the defendant's objection, "Cestaro was permitted to testify that she 'never got the sense that [the victim] was fabricating or making up the story,' and that she felt that what [the victim] was saying was true." Id., 531. We concluded that the trial court had abused its discretion because such testimony involved an assertion by an expert witness that validated the truthfulness of the victim. Id.

Although the state conceded at oral argument that Herwerth's statement was not proper, it argues that this case is distinguishable from *Butler* because the state's attorney never posed such an opinion question to any of the state's expert witnesses. The distinction the state seeks to draw is one without a difference. The true gravamen of the claimed impropriety is not in the questions asked, but rather that such *testimony* would validate S's veracity, thus usurping the jury's function of assessing the credibility of the witnesses. See id.

Because Herwerth's statement clearly involved a direct assertion that validated the truthfulness of S's testimony, we agree with the defendant that *Butler* is controlling. Accordingly, we conclude that the admission of Herwerth's statement was an abuse of the court's discretion.

2

The defendant next claims that McGeehan's statement that her treatment of S was for "the trauma of

the abuse that [S] experienced" was an indirect assertion that validated the truthfulness of S's testimony. Specifically, the defendant argues that McGeehan's statement was a conclusory opinion that had the same effect as if McGeehan had testified that she believed in S's truthfulness. We agree.

This case is similar to our decision is *State* v. *Apostle*, 8 Conn. App. 216, 232–33, 512 A.2d 947 (1986), in which we held that the trial court abused its discretion by admitting an expert witness' testimony that, in his opinion, the sexual intercourse between the victim and the defendant was nonconsensual. We stated that "[t]he general rule of law in such cases is that when [an expert witness] bases a conclusion in part upon statements made to him by the victim, he is in fact making a determination about the credibility of the [victim]. . . . Such credibility determinations are within the sole province of the jury." (Citation omitted.) Id., 233. Although *Apostle* dealt with a physician's opinion that was based on his physical examination of the victim, the victim's mental state at the time of the examination and the history of the incident as told to him by the victim, we see no reason not to apply the general rule to the facts of this case.

Here, McGeehan had no firsthand knowledge that S had been sexually abused. She did not witness any of the acts of the sexual assault. Any information acquired by McGeehan regarding the sexual abuse was obtained through conversations with other persons, namely S and Herwerth, who in turn had obtained her information from S. McGeehan's conclusory statement, therefore, was based in part on statements made to her by S.

While McGeehan's statement fell short of rendering an opinion on S's credibility, there is little difference in the ultimate result. Although her testimony was not a literal statement of her belief in S's truthfulness, such

testimony had the same substantive import and could be perceived as a conclusive opinion that S had testified truthfully. See id.; see also *State* v. *Haslam*, 663 A.2d 902, 906 (R.I. 1995). Accordingly, we conclude that the admission of McGeehan's statement was an abuse of the court's discretion.

3

Our conclusion that the trial court abused its discretion in admitting the improper evidence does not, however, end our inquiry. "Where an evidentiary ruling has been found to be incorrect, but the improper ruling, as here, does not implicate a constitutional right of the defendant, the burden rests on the defendant to establish the harmfulness of the claimed impropriety. *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994); *State* v. *Merritt*, 36 Conn. App. 76, 92, 647 A.2d 1021 [(1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995)].

"In order to establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. *State* v. *Chapman*, supra, 229 Conn. 544. The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result? *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986); see also *State* v. *DePastino*, 228 Conn. 552, 567, 638 A.2d 578 (1994)." (Internal quotation marks omitted.) *State* v. *Butler*, supra, 36 Conn. App. 531–32.

Although this case turned on the issue of S's credibility and which version of the facts the jury chose to believe, we cannot conclude that the experts' testimony, which vouched for S's truthfulness, affected the outcome of the trial and denied the defendant his right to a fair trial. At the outset, we note that it is important

to view these statements in the context in which the questions were asked and answered. The improper statements made were not given in response to questions specifically designed to the expert's opinion as to whether S was truthful. Compare id., 529 (expert witness asked if she had formed opinion whether victim's story was truthful or fabrication). Therefore, the validating effect that these statements might have had on S's credibility was limited. Additionally, we note that the improper statements were not repeated during the trial, and the state's attorney did not emphasize or rely on the specific remarks in his closing argument.

Furthermore, our review of the jury instructions in this case reveals that the court specifically attempted to address the defendant's concerns regarding the testimony.[11] The court instructed the jury that "[t]he veracity of a witness is to be decided by the jury. . . . [O]ur law does not permit another witness to give an opinion on the truthfulness of still another witness and that is true in this case. So, the testimony of Herwerth [and] McGeehan . . . was not presented so [that] any one of them could tell you [their] opinion of [S's] truthfulness. To the extent any one of these . . . witnesses may have expressed her own opinion of [S's] truthfulness, you must not consider that opinion in coming to your decision." The court then informed the jury that the testimony given by the expert witnesses was presented to furnish them with guidance regarding sexual assault allegations. The court also instructed the jury that it could decide whether to use the substance of

---

[11] Prior to giving the jury instruction, the court noted for the record that it had given each counsel a copy of the proposed jury charge. The court informed both sides that it had tried to address the defendant's concerns regarding Herwerth's and McGeehan's testimony. Defense counsel, having reviewed the proposed charge indicated that he did not have any suggestions, complaints or exceptions to the charge. Further, defense counsel agreed with the state's attorney that the part of the charge that related to the expert's testimony was fair and balanced.

the experts' testimony, aside from their opinions as to veracity, in deciding whether to believe S's testimony.

The court's instructions clearly indicated to the jury that the jurors were the ultimate arbiter of the veracity of the witnesses and that they must not consider any expert witness' opinion regarding S's truthfulness. We note that a jury is presumed to follow the instructions given by the court. *State* v. *Teti*, 50 Conn. App. 34, 45, 716 A.2d 931, cert. denied, 247 Conn. 921, 722 A.2d 812 (1998). Therefore, in the absence of evidence to the contrary; see id.; we must presume that the jury followed the court's instructions. The cautionary language set forth in the instruction convinces us that there was no reasonable probability that the improper action of the court in admitting the testimony was so prejudicial as to deprive the defendant of a fair trial.

## II

The defendant next claims that the trial court improperly admitted certain constancy of accusation evidence by Herwerth that deprived him of his rights to confrontation and due process.[12] We do not agree.

The following additional facts are necessary to the determination of this issue. During direct examination, Herwerth testified about some of the details of the assault provided to her by S.[13] The defendant did not

---

[12] In addition to a violation of his federal rights to confrontation and due process, the defendant also alleges a violation of his rights under article first, § 8, of the constitution of Connecticut. Because he offers no separate analysis of this claim under the state constitution, we will not review it. See *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994).

[13] The following exchange took place between the assistant state's attorney and Herwerth:

"[Assistant State's Attorney]: When you talk about sensory details, what have you—

"[Herwerth]: She talked about things that were going on around her, and this is one of the things you look at; can they talk about their feelings, what's being said, who's there, where it took place, where other people were. [S] was able to talk about the television being on and a program. She talked about where she was at, what was said to her, where [the defendant's]

object at trial, but now claims that these various statements "[were] all hearsay statements that should not have been admitted under the constancy of accusation doctrine because they exceeded the limits of that doctrine as delineated by [*State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc)]." Because the defendant failed to raise this claim at trial, he now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40,[14] or, alternatively, under the plain error doctrine. We conclude that he cannot prevail under either of these standards.

While the record before us is adequate for review, the defendant has failed to meet the second prong of *Golding* because his claim is not one of constitutional magnitude. Unpreserved hearsay claims do not automatically invoke constitutional rights to confrontation. *State* v. *Veal*, 201 Conn. 368, 376, 517 A.2d 615 (1986). The constancy of accusation doctrine is an exception to the hearsay rule and has existed in Connecticut since 1830. *State* v. *Eged*, 48 Conn. App. 283, 288, 709 A.2d 39 (1998). "In Connecticut, [however] the doctrine of constancy of accusation does not violate an accused's state and federal constitutional rights to confront witnesses. *State* v. *Troupe*, [supra, 237 Conn. 293]." *State* v. *Eged*, supra, 288; see *State* v. *Lindstrom*, 46 Conn. App. 810, 816, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997) ("[o]ur Supreme Court has held

---

mother was, what [the defendant's] mother said to her. She talked about feelings and used all of her own words in being able to describe things like *'it tickled, [the defendant] thought I'd be scared, this was the first time'*; a lot of affectionate feelings.

"[Assistant State's Attorney]: And what was her demeanor like when she was saying these things to you?

"[Herwerth]: She was very nonchalant. She got very silly at times, somewhat showing some embarrassment, but to her it was this thing that she learned and she made statements such as, *'if I ever wanted to do it again, [the defendant] just told me to ask.'* " (Emphasis added.)

[14] See footnote 10.

that the constancy of accusation doctrine does not violate the right to confrontation"); *State* v. *Jones,* 44 Conn. App. 476, 487, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997) (evidentiary claim not of constitutional magnitude and therefore not subject to *Golding* review). The defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Vilalastra,* supra, 207 Conn. 46. Because the defendant has failed to allege a claim of constitutional magnitude, we decline to afford review under *Golding.*

Alternatively, the defendant urges us to review his claim under the plain error doctrine. Our review of the record indicates that the defendant had ample opportunity to cross-examine both Herwerth and S concerning the additional evidence provided by Herwerth. Furthermore, the court, during the trial, twice cautioned the jury that it was to use S's out-of-court statements regarding the incident only for purposes of determining the credibility of S's in-court testimony regarding the events and not for the purpose of determining the defendant's guilt. Additionally, during its final instruction, the court properly charged the jury on the law concerning constancy of accusation evidence. On the basis of our review of the record, we conclude that the admission of Herwerth's testimony did not affect the fairness and integrity of, nor the public confidence in, the judicial proceedings and, therefore, did not constitute plain error.

## III

The defendant's third claim is that the trial court improperly declined to conduct an in camera inspection of S's mental health records. Specifically, the defendant argues that he had a due process right under the fourteenth amendment to the United States constitution to an in camera inspection of S's psychiatric records to

determine whether exculpatory information existed.[15] We do not agree.

The following facts provide the necessary background to the disposition of this issue. Prior to trial, the defendant made a motion requesting the court to conduct an in camera inspection of S's psychiatric records pursuant to *State* v. *D'Ambrosio,* 212 Conn. 50, 58, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990) (in camera inspection when record may contain material needed to attack credibility of witness), and *State* v. *Leduc,* 40 Conn. App. 233, 246–47, 670 A.2d 1309 (1996) (in camera inspection when record may contain exculpatory material). The court subsequently held a pretrial hearing to allow the defendant to make the necessary preliminary showing to obtain an in camera review of the records.

At the hearing, the defendant called only one witness, McGeehan, to testify in support of his motion. In response to questions from defense counsel and the court, McGeehan stated that the records she kept in the course of her meetings with S did not contain any indication that S had a mental abnormality that might reflect on her credibility regarding the accusations about the defendant. Thereafter, defense counsel ended his questioning, and stated that he was satisfied with the scope of the inquiry and that he believed there were no reports that would be material to the defense.

After being reminded by the court that *Leduc* addressed issues different from those in *D'Ambrosio,* defense counsel resumed his questioning of McGeehan. In response to further questioning by defense counsel and the court about whether her records might contain any exculpatory material, McGeehan testified that she

[15] The defendant does not claim a right to the inspection on the basis of his right to confrontation under the sixth amendment to the United States constitution.

did not think that there was any such material in her records.[16] At this point, defense counsel agreed that he had not made a showing that would require the court to examine S's records in camera and thereafter stated that there was no requirement that the records be examined. After being asked repeatedly by the court whether defense counsel wanted to address any further questions to McGeehan or wanted the court to do anything further regarding his motion, the defendant effectively withdrew his motion for an in camera inspection of S's records.[17]

The defendant now claims, however, that the court should have conducted the inspection. Because the defendant failed to preserve this claim properly at trial, he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40,[18] or, alternatively, under the plain error

[16] In response to the court's inquiry as to whether "there [was] anything in the records which would be favorable to the defendant that the defendant would like the jury to hear that would have the tendency to make the jury have . . . a reasonable doubt about [S's] accusations," McGeehan stated, "I don't think there's anything there that would do that."

[17] The following exchange took place between the court and defense counsel:

"The Court: Anything else, [defense counsel]?

"[Defense Counsel]: No, Your Honor. . . .

"The Court: Is there any further question to address to Ms. McGeehan under any claim that—preliminary to the defendant getting access to her records?

"[Defense Counsel]: I think the appropriate inquiries have been made, Your Honor. . . .

"The Court: Now is the time to do it. I don't want any claim tomorrow, 'Well, maybe if we asked her this, that or the other thing it might establish it.'

"[Defense Counsel]: As I understand it, Your Honor, [McGeehan] has no knowledge or information with respect to anything that would suggest that there was something favorable to the defense that would come forth from the records that would exist . . . .

"The Court: Do you want me to do anything further?

"[Defense Counsel]: May I have a moment, Your Honor?

"[Defense Counsel]: After discussion with my client, Your Honor, I don't think we want to pursue the request that the records be brought in, given [McGeehan's] responses."

[18] See footnote 10.

doctrine. The situation here is in the nature of induced error. Although it is the general rule that a party who induces error cannot be heard to complain about such error; see *State* v. *Edwards*, 39 Conn. App. 242, 251, 665 A.2d 611, cert. denied, 235 Conn. 924, 925, 666 A.2d 1186 (1995); unpreserved claims of constitutional magnitude, even when induced by the appellant, may be reviewed pursuant to *Golding*. See *State* v. *Boyd*, 36 Conn. App. 516, 521, 651 A.2d 1313, cert. denied, 232 Conn. 912, 654 A.2d 356, cert. denied, 516 U.S. 828, 116 S. Ct. 98, 133 L. Ed. 2d 53 (1995).

The record before us is adequate for review and the defendant's claim is one of constitutional magnitude. See *State* v. *Leduc*, supra, 40 Conn. App. 249. Therefore, we will review the defendant's unpreserved claim. Even though we review this claim under the third prong of *Golding*, we note that "[w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut. . . . *State* v. *Safford*, 22 Conn. App. 531, 539, 578 A.2d 152 [cert. denied, 216 Conn. 823, 581 A.2d 1057] (1990); *State* v. *Chapman* 16 Conn. App. 38, 48, 546 A.2d 929 (1988); *State* v. *Huff*, 10 Conn. App. 330, 338, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). Appellate review of the claim without the defendant's ever having brought it to the attention of the trial court would be tantamount to an ambuscade of the trial court. See *State* v. *Safford*, supra [539]." (Internal quotation marks omitted.) *State* v. *Johnson*, 26 Conn. App. 433, 438, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992).

In *State* v. *Leduc*, supra, 40 Conn. App. 249–50, we concluded that a defendant has a due process right, upon request and after meeting a requisite threshold,

to an in camera inspection of qualified confidential records. Here, because the defendant withdrew his motion, the court never had the opportunity to determine whether the defendant made the necessary preliminary showing for such an inspection. The defendant argues, however, that the court should have, sua sponte, ordered an in camera inspection of the records on the basis of McGeehan's testimony that she *did not think* there was exculpatory material in them. The defendant offers us no authority or reason for imposing such a duty on the court. To impose such a duty would be an unorthodox application of *Leduc* in which we required the defendant to request and meet the requisite threshold before obtaining an in camera inspection of qualified confidential records. We decline the defendant's invitation to impose such a duty on the court in the present case. We conclude, therefore, that the defendant was not deprived of a fair trial and may not prevail under *Golding* because he has not demonstrated that an error of constitutional magnitude clearly exists. Similarly, we conclude, on the basis of on our review of the record, that the claimed error did not affect the fairness and integrity of, nor the public confidence in, the judicial proceedings and, therefore, did not constitute plain error.

## IV

The defendant's final claim is that the evidence was insufficient to support the jury's guilty verdict because S did not make an in-court identification of the defendant as the perpetrator of the sexual assault. Therefore, the defendant claims, the jury could not find him guilty beyond a reasonable doubt. We do not agree.

"We utilize a two-part analysis when reviewing a challenge to the sufficiency of evidence. . . . First, we review the evidence in the light most favorable to sustaining the verdict. . . . We then determine whether,

on the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence establishes guilt beyond a reasonable doubt. . . . In the review process, the probative force of the evidence is not diminished if it consists in whole or part of evidence that is circumstantial rather than direct. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon jury discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 563, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

During direct examination by the state, S, who was seven years old at the time of the trial, testified that her "Uncle David" had sexually assaulted her at his house. When shown a photograph of the house where the defendant lived, S identified it as the defendant's house, where the abuse occurred. S also testified that

her "grandma Mary" lived in the same house as the defendant. Upon further questioning by the state, S specifically identified the downstairs room in that house as being the location where the defendant had abused her. S testified that the downstairs room was the defendant's room. When asked whether she saw "Uncle David" anywhere in the courtroom, however, S gave a negative response.

Although S was able to identify the photographs of the house, the room that the defendant lived in and where the abuse occurred, the defendant argues that this is inconsistent with the fact that she could not identify her abuser in court. The defendant claims, therefore, that S's failure to identify her abuser in court severely undercut the reliability of her testimony and identification of the photograph. The defendant argues that inasmuch as S's testimony was unreliable, for the jury to have concluded as it did, it must have impermissibly relied substantively on the testimony of the constancy of accusation witnesses. Because constancy of accusation testimony cannot be used to prove the truth of the matter asserted; see *State* v. *Troupe*, supra, 237 Conn. 304; the defendant claims that there is insufficient evidence in the record to establish beyond a reasonable doubt that he was the perpetrator of the assault. The defendant's argument is without merit.

Although S testified that she did not see her assailant in the courtroom, the record indicates that the defendant had lost weight and changed his hairstyle since S had last seen him three to four years earlier. Additionally, the state presented testimony from Rose Niedzwicki, the director of the sexual abuse services at the Child Guidance Clinic of Southeastern Connecticut. Niedzwicki testified that she had been with the clinic for eleven years and that during those years she had treated approximately 1000 children who have complained of being the victims of sexual assault or abuse.

During her testimony, Niedzwicki explained that children in age similar to S characteristically are very poor at identifying their abusers. Niedzwicki also gave several reasons why such children are very poor at identifying their abusers.

"As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . State v. Mejia, [233 Conn. 215, 224, 658 A.2d 571 (1995)]. . . . State v. James, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996). . . . State v. Gould, [241 Conn. 1, 6–7, 695 A.2d 1022 (1997)]. When conflicting testimony is presented, the jury may credit the testimony it finds believable. See State v. Person, 236 Conn. 342, 347, 673 A.2d 463 (1996)." (Internal quotation marks omitted.) State v. Edwards, 247 Conn. 318, 323, 721 A.2d 519 (1998). Therefore, "[t]he [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) State v. Marsala, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

In addition to S's testimony, which the trier of fact was entitled to credit, the jury heard testimony from several other witnesses,[19] all of whom testified that in 1993 the defendant lived at the house depicted in the photograph previously identified by S and that the

---

[19] We note that "[t]he jury may . . . consider other testimony of a witness that is unrelated to constancy of accusation as long as it does not fall within the category of hearsay. In other words, a witness who testifies in order to corroborate a victim's accusations . . . may testify about other matters, and the jury is not precluded from considering this testimony." State v. Leduc, supra, 40 Conn. App. 238.

downstairs room was in fact the defendant's room. Additionally, the defendant himself testified that the first floor room, which was identified by S as the room where the sexual assault had occurred, was his room. Although there was testimony that S had two uncles named David, S's mother testified that S's other Uncle David, who was not actually an uncle but rather a paternal cousin, lived in Franklin and had never lived in the house depicted in the photograph. The record reflects that in 1993, there was no one else by the name of David living at the house in question.

After construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant was the perpetrator and could have found him guilty beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.